WIN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Ex rel.* AMY BETH MAIN | Civil Action No. _____ |
| | 2017 MAR 29 AM 8:29 |
| | 2:16cv-40   CLERK |
| **Plaintiff /Relator,** | FILED *IN CAMERA* AND   BY   UAW<br>UNDER SEAL   DEPUTY CLERK |
| **vs.** | |
| | **FALSE CLAIMS ACT<br>MEDICARE AND<br>MEDICAID<br>FRAUD** |
| **BRATTLEBORO MEMORIAL<br>HOSPITAL, INC.** | |
| | **JURY TRIAL DEMANDED** |
| **Defendant** | |

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

### RELATOR'S AMENDED COMPLAINT PURSUANT TO 31 U.S.C §§ 3729- 3732 OF THE FEDERAL FALSE CLAIMS ACT, VERMONT HEALTH CARE WHISTLEBLOWERS PROTECTION ACT AND WRONGFUL DISMISSAL BY CONSTRUCTIVE DISCHARGE COMMON LAW BREACH OF CONTRACT

The United States of America, by and through *qui tam* relator AMY BETH MAIN,

(Relator), brings this action under 31 U.S.C §3729, *et seq.*, as amended (False Claims

Act) to recover all damages, penalties and other remedies established by the False

Claims Act on behalf of the United States.

## I.    PRELIMINARY STATEMENT

1.    This is an action to recover damages and civil penalties on behalf of the

United States of America, for violations of the False Claims Act arising from false or

Watts Law Firm, P.C. PO Box 270 Woodstock, VT 05091
Phone: (802) 457-1020, Fax: (802) 432-1074, Email: info@wattslawvt.com

1

fraudulent records, statements, or claims, or any combination thereof, made, used or caused to be made, used, or presented, or any combination thereof, by the defendant, their agents, employees, or co-conspirators, or any combination thereof, with respect to false claims for all forms of medical services, procedures and medications for which claims were made to the federal Medicare and Medicaid Programs.

2.     The False Claims Act was enacted during the Civil War. Congress amended the False Claims Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

3.     The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.

4.     The Act allows any person having information about a false or fraudulent claim against the U.S. Government to bring an action for herself and the Government,

and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

5.    Under Medicare and Medicaid:

(a) Hospitals, clinics, practices, procedures and related services;

(b) Medical doctors, nurses and other prescribers;

(c) Mental health agencies and pharmacies, and

(d) Hospital administrators

all have specific responsibilities to prevent false claims from being presented and are liable under the False Claims Act for their role in the submission of false claims.

6.    This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S.C. §3729, et seq., as amended.

## II.    PARTIES

7.    Relator, AMY BETH MAIN, was defendant's administrative employee with responsibilities for defendant's financial services who experienced, observed and protested defendant's irregular, inaccurate, improper and illegal billings to the Medicare and Medicaid programs for medical services, procedures and prescriptions.

8.    Relator is an experienced hospital administrator with a Masters of Business Administration in Healthcare Management, a Bachelor of Arts with concentration in Health Systems Management.

9.    As a Brattleboro Memorial Hospital ("BMH") employee, relator managed the daily operations of the business office including admissions, billing, collection/cashiering and switchboard functions; established policies, procedures, standards and objectives for various departments. She was responsible for hospital-wide telecommunications budget and operations. She developed long-term accounts receivable strategies to maximize reimbursement, expedite cash flow and keep account receivables at appropriate levels. She shared responsibility for ensuring that hospital activities were consistent with its policies and governmental and third-party regulations for billing and collection practices.

10.   Defendant, is a Vermont incorporation and is located in Brattleboro, Vermont in the District of Vermont and engaged in providing medical services, procedures, treatments and prescriptions to the public and submitting claims for such services, procedures, treatments and prescriptions to Medicare, Medicaid and third parties for reimbursement.

11.   Defendant transacts business in the District of Vermont, and

(a) submitted or caused to be submitted claims to Medicare    and Medicaid for medical services, procedures, treatments and prescriptions for the public, and,

(b) on information and belief, continues to submit or cause to be submitted claims to Medicare Medicaid for medical services, procedures, treatments and prescriptions.

## III.    JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

13.    There have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. §3730(e).

14.    This Court has personal jurisdiction over the defendant pursuant to 31 U.S.C.  §3732(a) because that section authorizes nationwide service of process and because the defendant has at least minimum contacts with the United States and can be found in, reside, or transact or have transacted, business in the District of Vermont.

15.    Venue exists in the United States District Court for the District of Vermont pursuant to 31 U.S.C. § 3730(b)(1) defendant has at least minimum contacts with the United States and can be found in, reside or transact or have transacted business in the District of Vermont.

16.        Accompanying the *Qui Tam* Complaint is the *Relator's    Section 3730(B)(2) Disclosure Statement,* also under seal.

## IV. APPLICABLE LAW

### A. Medicare

17.    Medicare is a national social insurance program the federal government administers, providing health and medical insurance for the public aged 65 and older who have worked and paid into the system. It also provides health and medical insurance to younger people with disabilities, end-stage renal disease and amyotrophic lateral sclerosis. 42 U.S.C. §1395 *et seq*, as amended, and related regulations administered by the Centers for Medicare and Medicaid Services. (CMS).

18.    Medicare reimburses hospitals and other health and medical care facilities for services, procedures and prescriptions to individuals covered by the law's provisions.

19.    Every Medicare provider must comply with all Medicare regulations and requirements.

### A.    Medicaid

20.    Medicaid is a public assistance program providing for payment of medical expenses for low-income patients. Funding for Medicaid is shared between the federal government and state governments.

21.    Federal reimbursement for health and medical care and prescription drugs under the Medicaid program is provided pursuant to 42 U.S.C. §1396, *et seq.*

Watts Law Firm, P.C. PO Box 270 Woodstock, VT 05091
Phone: (802) 457-1020, Fax: (802) 432-1074, Email: info@wattslawvt.com

6

22.   Every Medicaid provider must agree to comply with all Medicaid regulations and requirements.

**B.    False Claims Act**

23.   False Claims Act liability attaches to any person or organization that knowingly presents or causes a false or fraudulent claim to be presented for payment or a false record or statement made to acquire a false or fraudulent claim paid by the government. 31 U.S.C. §3729(a)(1)&(2).

24.   Under the False Claims Act, "knowing" and "knowingly" means that a person, with respect to information:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information -- no proof of specific intent to defraud is required.  31 U.S.C. §3729(b).

25.   The False Claims Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

## IV.    ALLEGATIONS

26.   Defendant BMH provided medical services, procedures and prescriptions to the members of the public who were and are covered by the Medicare and/or Medicaid programs.

27.   Defendant submitted many such claims for such services, procedures, treatments and prescriptions to Medicare and/or Medicaid for reimbursement.

28.   Many of claims submitted to the Medicare and/or Medicaid programs constituted false claims under the False Claims Act.

29.   Based on relator's complaints about the billing procedure and its own investigations, defendant was aware of the false claims to the federal government but made few procedural reforms to correct the billing process.

## V.   CAUSES OF ACTION

### A.  False or Fraudulent Billing of Medicare and Medicaid

30.   Defendant provided health and medical services and prescription medications for patients covered by Medicare and Medicaid ("the programs") that were billed to the agencies but were false or fraudulent.

31.   Specifically, defendant billed the programs for health, medical and related services, as well prescription medications, that were wrongfully coded so that defendant was reimbursed for the expense of the provided or unprovided health, medical and related services, as well prescription medications, at a higher level and

rate than were actually delivered or provided to the covered patients.

32.   Defendant's actions caused the programs to reimburse it for the provided and unprovided health, medical and related services, as well prescription medications, at a higher level and rate than were actually delivered or provided to the covered patients; defendant did so

(1) with actual knowledge;

(2) in deliberate ignorance; or

(3) in reckless disregard

that such claims were false, and defendant is liable under the False Claims Act therefor.

33.   Upon information and belief, defendant continues to act as described in paragraphs 26-28, thereby causing claims for such provided and unprovided health, medical and related services, as well prescription medications to be made to the programs for reimbursement

(1) with actual knowledge;

(2) in deliberate ignorance; or

(3) in reckless disregard

that such claims are false, and are liable under the False Claims Act therefor.

34.  On  numerous  occasions  relator  complained  to  defendant's executives  and  managers  about  the  false  and  fraudulent  billings  to  the programs.

Watts Law Firm, P.C. PO Box 270 Woodstock, VT 05091
Phone: (802) 457-1020, Fax: (802) 432-1074, Email: info@wattslawvt.com

9

35.    Relator advocated comprehensive reforms that would have implemented procedures, restrictions and/or limitations to the claims defendant submitted to the programs and ensured that the claims and the reimbursements would be accurate and justified.

36.    Among the reforms was specific training for defendant's billers and coders who prepared the claims for submission to the programs; the billers and coders were staff persons who were not certified coders but were untrained in policy and regulatory practices.

37.    Actually defendant's July 2015 internal report urged that it implement formal coding team training and clinical documentation improvement; the report indicated that failure to retain certified billers "could cause issues with payers."

38.    The result of the staff deficiency was that coding and billing to the programs were based on false and/or fraudulent claims for services that were not rendered as billed.

39.    There were systematic "switches" in billing categories whereby defendant billed the programs for inpatient services that were later switched outpatient without notifying the programs; in those instances defendant was reimbursed at a considerably higher rate for inpatient services.

40.    In some cases she was able to implement procedural    reforms that rectified some of the improper coding and billing procedures that had   enabled

defendant to falsely bill the programs.

41.    But, overall, defendant's executives and managers remained in control of the procedures that enabled defendant to falsely bill the programs and thwarted relator's reform efforts.

42.    Defendant's resistance to reforms occurred despite its July 2015 internal report admitting that staff was not properly checking medical   necessity prior to providing services and ordered services were not properly verified to meet medical necessity guidelines prior to service; defendant's concern was not that its claims to the program were false or fraudulent but that it had lost nearly $1 million as write-offs because of denials from the programs for lack of substantiated medical necessity; the report also warned that audits and potential compliance issues might occur.  (Exhibits 3 & 4).

43.    The report also admitted that a nationally recognized "medical necessity" tool is not used to determine appropriate patient status and patient status management is often reactive and not completed in accordance with federal regulation.

44.    Defendant's 2014 net patient service revenue was $72 million; Medicare reimbursements were $30 million.

45.    The most recent Medicare audit was 2010 and the most recent Medicaid audit was 2008.

46.    These and other factors mean that defendant violated the False

Claims Act with actual knowledge, in deliberate ignorance or in reckless disregard of its provisions and the ramifications of its actions.

### B. Illegal Retaliation under False Claims Act

47.   The Act forbids retaliation against employees and others who complain about illegal practices such as false or fraudulent billing of claims to the government. 31 U.S.C. §3730(h).

48.   Relator's performance evaluations were positive and complimentary throughout her employment - until she escalated her complaints about defendant's financial procedures including its government billing practices.

49.   In January 2016, defendant levelled a "corrective action plan" against relator, alleging, *inter alia*, that her administration of its financial services were causing her supervisor to devote excessive time to revenue cycle matters rather than policy and strategic objectives. Defendant also established unachievable objectives for relator to reduce outstanding accounts receivables while also obtaining the full range of entitled reimbursements from the programs and third parties.

50.   Defendant also refused to approve reforms that would have eliminated the false and fraudulent billings to the programs.

51.   At some point in late 2015, defendant became aware that   relator's concerns about false and fraudulent billing had escalated to the point where

she was adamant about the reforms she believe necessary to prevent further false billings to the programs and correct the systemic problems.

52.   Defendant's corrective action was based on false accusations concerning matters she had advocated be corrected, defendant had rejected or were not her responsibility; as such the corrective action constituted harassment.

53.   Defendant's resistance to the proposed reforms, its discipline of relator and her concerns about possible personal liability for the irregular and illegal billing procedures created a hostile work environment that caused relator to resign.

## VI.   DEFENDANT'S LIABILITY

54.   By virtue of the acts described above, defendant knowingly (a) submitted, and, on information and belief, continues to submit, and/or (b) caused and/or continued cause to be submitted, false or fraudulent claims to the United States Government for payment of health, medical and related services, as well prescription medications.

55.   The Government paid and continues to pay for many such false claims.

56.   By reason of the defendant's actions, the United States has been damaged, and, on information and belief, continues to be damaged, in substantial amount to be determined at trial.

57.   In addition, under the Act, prohibited retaliation includes: termination, suspension, demotion, harassment or any other discrimination in the terms and conditions of employment. In order to prevail, an employee must prove: (1) that the employee took action in furtherance of an action under the Act; (2) that the employer knew about these acts; and (3) that the employer discriminated against the employee because of such conduct.

58.   As delineated above, (1) relator took action in furtherance of an action under the Act; (2) that defendant knew about her acts, and (3) that defendant discriminated against relator because of her conduct.

## VERMONT'S HEALTHCARE WHISTLEBLOWER'S PROTECTION ACT

59.   Under Vermont's Healthcare Whistleblower Act ("HWPA"), 21 V.S.A. § 507, *et seq,* an employer  shall not retaliate against an employee  who reasonably believes  a violation   of the law has or is occurring or that patient care is being compromised and who discloses or threatens to disclose the  violations to  any person  or  entity.

60.   The Medicaid program is jointly funded by the federal and state governments, in this case, the USA and  the state of Vermont.

### FOURTH CAUSE OF ACTION -

### VIOLATION OF VERMONT'S HEALTHCARE WHISTLEBLOWERACT

61. Relator incorporates paragraphs 1-60 into this Cause of Action.

62. Under Vermont's Healthcare Whistleblower Act ("HWPA"), 21V.S.A. § 507, *et seq,* an employer shall not retaliate against an employee who reasonably believes a violation of the law has or is occurring or that patient care is being compromised and who discloses or threatens to disclose the violations to any person or entity.

63. Relator believed Respondent violated Vermont's Healthcare Whistleblower Act ("HWPA") by falsely billing the state for Medicaid-related patient services, treatment and care, as described above concerning Relator's allegations concerning violations of the HWPA.

64. Specifically, Respondent billed the state for Medicaid for health, medical and related services that were wrongfully coded so that Respondent was reimbursed for the expense of provided or un-provided health, medical and related services, at a higher level and rate than were delivered or provided to the covered patients.

65. Respondent's actions caused Medicaid to reimburse it for the provided and un-provided health, medical and related services at a higher level

Watts Law Firm, P.C. PO Box 270 Woodstock, VT 05091
Phone: (802) 457-1020, Fax: (802) 432-1074, Email: info@wattslawvt.com

15

and rate than were delivered or provided to the covered patients.

66.    Respondent engaged in coding and billing practices, as described, and did so 1) with actual knowledge; 2) in deliberate ignorance; or 3) in reckless disregard that such claims were false and Respondent is liable under the HWPA for its transgressions of it.

67.   On information and belief, Respondent continued its illegal billing practices, as described, and caused claims for health, medical and related services to be made to Medicare and Medicaid for reimbursement 1) with actual knowledge; 2) in deliberate ignorance; or 3) in reckless disregard that such claims are false - and is liable under the HWPA.

68.   On numerous occasions, Relator complained to Respondent's executives and managers about the false and fraudulent billings to the state Medicaid program.

69.   Respondent's leadership and management denied, rejected and/or ignored Relator's entreaties to change its coding and billing practices so that they complied with Medicaid rules and regulations.

70.   These and other factors mean that Respondent violated the HWPA with actual knowledge, in deliberate ignorance or in reckless disregard of its provisions and the ramifications of its actions in violation of the HWPA.

71.   Through its actions, as described, Respondent knowingly (a) submitted and continues to submit and/or (b) caused and or continued to cause to be submitted, false

or fraudulent claims to the Medicaid program for payment of health, medical and related services.

72. The state paid and continues to pay Respondent for such Medicaid false claims.

73. Because of Respondent's actions, the state has been damaged, and, on information and belief, continues to be damaged in substantial amounts to be determined after thorough investigation and at trial.

74. *As* delineated above, Relator took actions pursuant to the HWPA and Respondent was aware of her actions.

75. Respondent's actions violated the HWPA.

## FIFTH CAUSE OFACTION –

## ILLEGAL RETALIATION UNDER THE HWPA

76. Relator incorporates paragraphs 1-92 into this Cause of Action.

77. The HWPA forbids retaliation against any healthcare employee who discloses or threatens to disclose to any person or entity any activity, policy, practice, procedure, action or failure to act of the employer or agent of the employer that the employee reasonably believes is a violation of any law or that the employee reasonably believes constitutes improper quality of patient care.

78. Healthcare employees who report alleged violations of law or improper quality of patient care to the employer and the employer has a reasonable opportunity to address the violation shall not be retaliated against for reporting such violation(s)

Watts Law Firm, P.C. PO Box 270 Woodstock, VT 05091
Phone: (802) 457-1020, Fax: (802) 432-1074, Email: info@wattslawvt.com

17

or improper patient care unless such reports would be futile.

79.  Relator disclosed to Respondent that some of its procedure coding for billing Medicare and Medicaid were improper and/or illegal under state and federal laws and regulations.

80.  Relator reasonably believed that Relator's coding and billing procedures for Medicare and Medicaid services and treatments for patients were improper and/or illegal and would cause monetary damages and losses the state and federal programs.

81.  Respondent had ample and reasonable opportunity to address the violations Relator reported to it.

82.  Instead of admitting the practice existed and was improper and/or illegal, Respondent fired the Relator from her employment.

83.  Respondent's dismissal of Relator constituted illegal retaliation against her in violation of the HWPA.

### SIXTH CAUSE OF ACTION –

### WRONGFUL TERMINATION FROM EMPLOYMENT BY CONSTRUCTIIVE DISHCARGE


84.  Relator incorporates paragraphs 1-83 into this Cause of Action.

85.  Relators actions, as described above, particularly defendant's retaliatory conduct caused plaintiff to experience intimidation and fear

at a profound level.

86.   Defendant's conduct made working conditions intolerable and forced plaintiff to resign her employment with defendant.

87.   Together with defendant's retaliation against plaintiff and its imposition of intolerable working conditions, defendant's actions constituted wrongful termination by virtue of constructive discharge.

88.   Defendant's wrongful discharge of plaintiff caused her to experience personal and career monetary losses.

89.   Defendant's wrongful discharge of plaintiff caused her to experience anxiety and other emotional conditions.

## DEFENDANT'S LIABILITY

90.   By virtue of the acts described above, defendant knowingly (a) submitted, and, on information and belief, continues to submit, and/or (b) caused and/or continued cause to be submitted, false or fraudulent claims to the State of Vermont for wrongful payment of health, medical and related services, as well prescription medications.

91.   The State of Vermont wrongfully paid and continues to pay for many such false claims.

92.   By reason of the defendant's actions, the State of Vermont has been

damaged, and, on information and belief, continues to be damaged, in substantial amount to be determined at trial.

## PRAYER FOR
## RELIEF

WHEREFORE, Relator, United States of America, through Relator, requests the Court enter the following relief:

A. That defendant be ordered to cease and desist from violating 31 U.S.C. §3729,

*et seq.*

B. That the Court enter judgment against defendant in an amount equal to

three times the amount of damages the United States has sustained because of

defendant's actions, plus a civil penalty of not less than $5,500 and not more than

$11,000 for each violation of 31 U.S.C. §3729;

C. That Relator be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act.

D. That the Relator be awarded the maximum amount allowed for

violations of Vermont's Whistleblower Protection Act, 21 V.S.A. §507 *et seq.*

E. That Relator be awarded all costs of this action, including attorneys'

fees and expenses;

F.   That Relator be awarded compensation for any special damages sustained as a result of defendant's wrongful constructive discharge of plaintiff, including lost compensation, litigation costs and reasonable attorneys' fees.  31 U.S.C. §3730(h)(2), and

G.  That Relator recover such other relief as the Court deems just and proper.

DATED: 3/17/17 .

By: _____ .

Norman E. Watts
Watts Law Firm
PC Relator's
Counsel

## Certificate of Service

The undersigned hereby certifies that a copy of this Complaint has been served on the Government as provided in FRCP 4.

Dated: 3/17/17 .

Norman E. Watts
Watts Law Firm PC
Relator's Counsel